**AFFIDAVIT IN SUPPORT OF SEARCH WARRANT**

Your affiant, Alexander Tisch, being first duly sworn, hereby deposes and states as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search the locations below, as further described in Attachment A hereto:

> **Target Device**: a purple iPhone, with a "Kate Spade" case, taken from Zionn SANDOVAL on January 11, 2023, during Pima County Sheriff's Department investigation number 230111164;

in order to search for and seize the items outlined in Attachment B, which represent evidence, fruits, and/or instrumentalities of the criminal violations further described below.

2.      I am a Special Agent (SA) with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), and have been so employed since January 2015. I am a graduate of the Federal Law Enforcement Training Center and the ATF National Academy, where I received training in firearms identification, surveillance techniques, interrogation methods, drug identification, and explosives and arson investigation techniques. Prior to working for the ATF, I was employed as a Deputy Sheriff with the Pima County Sheriff's Department (PCSD) for eleven years. While employed as a Deputy, I received a wide variety of training including the following topics: defensive tactics, firearms, pursuit training, basic patrol investigations, application of Arizona Revised Statutes, interrogation, court testimony, narcotics trafficking, driving

under the influence investigations, domestic violence, animal cruelty, continuing criminal enterprises, assaults, robbery, and homicide.

3.      I am currently assigned to the Phoenix Field Division, Tucson II Field Office. As result of my training and experience as an ATF Agent, I am familiar with federal firearm and ammunition laws. During my tenure with the ATF, I have participated in numerous investigations involving the illegal possession of unregistered firearms, illegal manufacturing of machineguns, illegal manufacturing of silencers, straw purchasing of firearms, dealing firearms without a license, falsifying information to illegally obtain firearms, and interstate and international firearms and ammunition trafficking.

4.      I am investigating violations of 26 U.S.C. § 5861(d), unlawful possession of a firearm not registered in the National Firearms Registration and Transfer Record.

5.      I am familiar with 26 U.S.C. § 5861(d), which states: It shall be unlawful for any person to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record (NFRTR).

6.      The NFRTR is the central registry of all NFA firearms in the U.S. which are not in the possession or control of the U.S. Government. The registry includes (1) the identification of the firearm, (2) date of registration, and (3) identification and address of the person entitled to possession of the firearm (the person to whom the firearm is registered).

7.      The statements contained in this Affidavit are based on information derived from my personal knowledge, training and experience; information obtained from the knowledge and observations of other sworn law enforcement officers, either directly or

indirectly through their reports or affidavits; surveillance conducted by law enforcement officers; information provided by a confidential source; and analysis of public records.

8.      Because this Affidavit is being submitted for the limited purpose of establishing probable cause for the requested warrant, I have not set forth all of the relevant facts known to law enforcement officers.

## PROBABLE CAUSE

9.      On January 11, 2023, Deputy Ponza, working for the Pima County Sheriff's Department (PCSD), conducted a traffic stop of a green Dodge Charger bearing Arizona license plate KPA16E. The entire contact was recorded by Body Worn Camera. The driver of the vehicle was identified as Zionn Olah Tascyi SANDOVAL. Deputy Ponza smelled a strong odor of marijuana coming from inside the vehicle. Deputy PONZA asked the occupants to step outside. SANDOVAL claimed the vehicle belonged to him. Deputy Ponza asked for his consent to search the vehicle. SANDOVAL verbally granted consent.

10.     In a backpack behind the driver's seat, Deputy Ponza located a Glock machinegun conversion device in addition to various drugs packaged for sale. The Glock machinegun conversion device showed signs of wear which indicated it had likely been installed on a firearm at some point in time.



11.     SANDOVAL was read his Miranda warnings and agreed to answer questions. Deputy Ponza began questioning SANDOVAL about the device. SANDOVAL became very nervous and took several seconds before answering. SANDOVAL claimed the item was a piece of jewelry. SANDOVAL stated he purchased it from a male with multiple tattoos on his face while at the "swap meet" for $75. He stated he intended to bring it to a Jeweler who was going to weld it onto a necklace. SANDOVAL said he knew the owner of

"El Princess", a jewelry shop. I searched for jewelers in the Tucson area named "El Princess", but I did not locate any.

12.     Later, Deputy Ponza referred to the device as a switch. This prompted SANDOVAL to state, "I thought it was a button, dude said it was a button". SANDOVAL remained steadfast that the item was intended to be jewelry. The item had no possible way to be worn as jewelry and could not be attached to jewelry in its current state.

13.     Deputy Ponza asked SANDOVAL if the item was registered with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). SANDOVAL had a blank expression on his face. Deputy Ponza explained that to legally possess a machinegun conversion device, it needed to be registered with ATF and a $200 tax stamp needed to be issued. Deputy Ponza also explained that a background check would have also been completed. SANDOVAL answered no by shaking his head.

14.     Deputy Ponza arrested SANDOVAL for violations of Arizona narcotics laws. SANDOVAL asked to make a phone call before going to jail. Deputy Ponza obtained an iPhone from the vehicle's driver seat. SANDOVAL spoke into the phone and called a contact labeled "KK". He arranged to have his child picked up. This same phone was later submitted to Pima County Sheriff's Department evidence. The Glock machinegun conversion device was also submitted to evidence.

15.     I know, based on training, experience and past investigations into Glock machinegun conversion devices, suspects often use their phones in several different capacities:

a.  Cell phones can access the internet which is historically the origin point of unregistered Glock machinegun conversion devices for sale. Websites like www.wish.com have been the source of illegal firearms such as the one in this investigation in the past. Suspects in other investigations have also posted Glock machinegun conversion devices for sale using apps like Snapchat. This can identify where the devices were purchased. Historical data, saved on the phone, can show investigators any online source of those illegal firearms.

b.  Cell phones are capable of taking photographs and videos. Suspects in past Glock machinegun conversion device investigations often take pictures of their illegal firearms with their phones. Videos of the firearms firing are also typically found. Images and videos are sometimes saved with location data. Location data can show where illegal firearms were and are.

c.  Cell phones are also used to search the internet for installation videos. Glock machinegun conversion devices need to be installed on the rear portion of a Glock slide. This can be difficult and some gunsmithing can be required. A history of searches is also usual stored on the phone.

d.  Cell phones also store contact lists. Contact lists may identify any co conspirators who are facilitating the illegal purchase, sales or manufacturing of Glock machinegun conversion devices. SANDOVAL said he knew the owner of a jewelry store who was going to put the Glock machinegun

conversion device onto a chain for him. This person's contact information may be stored in the phone.

e. Cell phones are the most common way to communicate. Cell phones allow several communication methods including phone calls, text messages and email access. Communication data gives investigators the ability to identify the source of illegal firearms and identify those who conspire to possess and sell them.

16.     I took custody of the Glock machinegun conversion device and determined it is similar in design, construction and size of other devices determined to be classified as machineguns. A machinegun is defined under 26 U.S.C § 5845(b) as follows: *For the purposes of the National Firearms Act the term Machinegun means: Any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot without manual reloading by a single function of the trigger.* I know that machineguns are regulated by the National Firearms Act (NFA). The NFA requires certain firearms, including machineguns, to be registered in the NFRTR. Individuals in possession of NFA firearms, which are not registered in the NFRTR, are in violation of 26 U.S.C. 5861 (d).

17.     I conducted a query in the NFRTR for firearms registered by SANDOVAL. I learned SANDOVAL has no firearms registered to him.

18.     Based upon the facts contained in this Affidavit, I submit there is probable cause to believe that the items listed in Attachment B will be found at the **Target Device**.

## DIGITAL EVIDENCE STORED WITHIN ELECTRONIC STORAGE MEDIA

19.     As described in Attachment B, this application seeks permission to search for records that might be found in or on the **Target Device**. Thus, the warrant applied for would authorize the seizure of all electronic storage media found on the **Target Device** and, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

20.     I submit that if electronic storage media are found on the **Target Device**, there is probable cause to believe records and information relevant to the criminal violations set forth in this Affidavit will be stored on such media, for at least the following reasons:

   a.     I know that when an individual uses certain electronic storage media, the electronic storage media may serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime.  The electronic storage media is an instrumentality of the crime because it is used as a means of committing the criminal offense.  The electronic storage media is also likely to be a storage medium for evidence of crime.  From my training and experience, I believe that electronic storage media used to commit a crime of this type may contain data that is evidence of how the electronic storage media was used; data that was sent or received; notes as to how the criminal conduct was achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense.

   b.     Based on my knowledge, training, and experience, I know that electronic storage media contain electronically stored data, including records related to communications made to or from the electronic storage media, such as the associated

telephone numbers or account identifiers, the dates and times of the communications, and the content of stored text messages, e-mails, and other communications; names and telephone numbers stored in electronic address books; photographs, videos, and audio files; stored dates, appointments, and other information on personal calendars; notes, documents, or text files; information that has been accessed and downloaded from the Internet; and global positioning system (GPS) information.

      c.    Based on my knowledge, training, and experience, I know that electronic files or remnants of such files can be recovered months or even years after they have been downloaded onto an electronic storage medium, deleted, or viewed via the Internet.  Electronic files downloaded to a storage medium can be stored for years at little or no cost.  Even when files have been deleted, they can be recovered months or years later using forensic tools.  This is so because when a person "deletes" a file on an electronic storage medium, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

      d.    Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the electronic storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

      e.    As previously set for in this Affidavit, SANDOVAL was in possession of the **Target Device** during the traffic stop. The **Target Device** was powered on and used by SANDOVAL during the offense. Therefore, I believe that evidence of

criminal activity will be found on the **Target Device** and that the electronic storage media constitute instrumentalities of the criminal activity.

21.     As further described in Attachment B hereto, this application seeks permission to locate not only electronic files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how the electronic storage media were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence will be found on the **Target Device** because:

a.     Data on a storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active.  Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords.  Files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache." Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. File systems can record information about the dates files were created and the sequence in which they were created, although this information can later be falsified.

b.     As explained herein, information stored within electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.  In my training and experience, information stored within electronic storage medium (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the storage medium.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the **Target Device** was remotely accessed, thus inculpating or exculpating the owner.  Further, activity on an electronic storage medium can indicate how and when the storage medium was accessed or used.  For example, as described herein, computers typically contain information that log: computer user account session times and durations, computer activity associated with user accounts, electronic storage media that connected with the computer, and the IP addresses through which the computer accessed networks and the internet.  Such information allows investigators to understand the chronological context of electronic storage media access, use, and events relating to the crime under investigation.  Additionally, some information stored within electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect.  For example, images stored on an electronic storage medium may both show a particular location and have geolocation information

incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The existence of such image files, along with external device connection logs, may also indicate the existence of additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated camera) not previously identified. The geographic and timeline information described herein may either inculpate or exculpate the user of the electronic storage medium. Last, information stored within an electronic storage medium may provide relevant insight into the user's state of mind as it relates to the offense under investigation. For example, information within a computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

      c.     A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

      d.     The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on an electronic storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, electronic storage medium evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on one electronic storage medium is evidence may depend on other information stored on that or other storage media and the application of

knowledge about how electronic storage media behave.  Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

      e.     Further, in finding evidence of how an electronic storage medium was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.  For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

22.     In most cases, a thorough search of a premises for information that might be stored on electronic storage media often requires the seizure of the physical storage media and later off-site review consistent with the warrant. In lieu of removing storage media from the premises, it is sometimes possible to make an image copy of storage media. Generally speaking, imaging is the taking of a complete electronic picture of the computer's data, including all hidden sectors and deleted files.  Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on the storage media, and to prevent the loss of the data either from accidental or intentional destruction.  This is true because of the following:

      a.     The time required for an examination: As noted above, not all evidence takes the form of documents and files that can be easily viewed on site.  Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises could be unreasonable. As explained above, because the warrant calls for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine electronic storage media

to obtain evidence.  Electronic storage media can store a large volume of information.
Reviewing that information for things described in the warrant can take weeks or months,
depending on the volume of data stored, and would be impractical and invasive to attempt
on-site.

        b.     Technical requirements:  Computers can be configured in several
different ways, featuring a variety of different operating systems, application software, and
configurations.  Therefore, searching them sometimes requires tools or knowledge that
might not be present on the search site.  The vast array of computer hardware and software
available makes it difficult to know before a search what tools or knowledge will be
required to analyze the system and its data on the premises.  However, taking the electronic
storage media off-site and reviewing it in a controlled environment allows for a thorough
examination with the proper tools and knowledge.

        c.     Variety of forms of electronic media:  Records sought under this
warrant could be stored in a variety of electronic storage media formats that may require
off-site reviewing with specialized forensic tools.

23.    Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I
am applying for would permit seizing, imaging, or otherwise copying electronic storage
media that reasonably appear to contain some or all of the evidence described in the warrant,
and would authorize a later review of the media or information consistent with the warrant.
The later review may require techniques, including but not limited to computer-assisted
scans of the entire medium, that might expose many parts of a hard drive to human
inspection in order to determine whether it is evidence described by the warrant.

24.     Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

25.     I submit there is probable cause to believe that the items listed in Attachment B hereto, which constitute evidence, fruits, and/or instrumentalities of violations of 26 U.S.C. § 5861(d), Possession of an Unregistered National Firearms Act firearm are likely to be found on the **Target Device** which is further described in Attachment A hereto.


_____
Special Agent Alexander Tisch
The Bureau of Alcohol, Tobacco, Firearms and
Explosives


Subscribed and sworn to me telephonically this ___21st___ day of February, 2023.

_____
Honorable Maria S. Aguilera
United States Magistrate Judge

## **ATTACHMENT A**

## **PROPERTY TO BE SEARCHED**

### **A-1: Target Device**

The property to be searched is a purple iPhone, with a "Kate Spade" case, taken from Zionn SANDOVAL on January 11, 2023, during Pima County Sheriff's Department investigation number 230111164. The **Target Device** is currently located in the ATF evidence vault (item #000002) located at 2255 W. Ina #301, Tucson, AZ 85741.



## ATTACHMENT B

## PROPERTY TO BE SEIZED

Data found on the **Target Device** that relates to the violations and suspect information set forth in the affidavit; specifically, evidence of possession of unregistered National Firearms Act firearms in violation of 26 U.S.C. § 5861(d) involving Zionn SANDOVAL and any known or unknown co-conspirators; including:

1.  Any records and information found within the digital contents of the **Target Device**, including:

    a.  all information related to the sale, purchase, receipt, shipping, importation, transportation, transfer, possession, of National Firearms Act firearms;

    b.  all information related to buyers or sources of National Firearms Act firearms (including names, addresses, telephone numbers, locations, or any other identifying information);

    c.  evidence of who used, owned, or controlled the **Target Device** at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, correspondence, and phonebooks;

    d.  evidence indicating how and when the **Target Device** was accessed or used to determine the chronological context of electronic storage media access, use, and events relating to the crime under investigation and to the electronic storage media user;

    e.  evidence indicating the **Target Device** user's state of mind as it relates to the crime under investigation;

    f.  evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the electronic storage media;

    g.  evidence of the times the electronic storage media were used;

h. passwords, encryption keys, and other access devices that may be necessary to access the electronic storage media;

i. records of or information about Internet Protocol addresses used by the **Target Device**;

j. records of or information about the **Target Device**'s Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any internet search engine, and records of user-typed web addresses;

k. contextual information necessary to understand the evidence described in this attachment.

l. Records which reflect the sale, trade, pawn, receipt, or disposition of any National Firearms Act firearm.

As used above, the terms "records" and "information" include all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data). This shall include records of telephone calls; names, telephone numbers, usernames, or other identifiers saved in address books, contacts lists and other directories; text messages and other stored communications; subscriber and device information; voicemails or other audio recordings; videos; photographs; e-mails; internet browsing history; calendars; to-do lists; contact information; mapping and GPS information; data from applications ("apps"), including stored communications; reminders, alerts and notes; and any other information in the stored memory or accessed by the electronic features of the computer, electronic device, or other storage medium.

This warrant authorizes a review of records and information seized, copied, or disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement

officers and agents, attorneys for the government, attorney support staff, and technical experts.   Pursuant to this warrant, the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) may deliver a complete copy of the seized, copied, or disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.